RUTH WERTHEIM SMITH, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent.
Smith v. Commissioner
Docket No. 1426-72
United States Tax Court
T.C. Memo 1975-339; 1975 Tax Ct. Memo LEXIS 35; 34 T.C.M. (CCH) 1474; T.C.M. (RIA) 750339; November 12, 1975, Filed John E. Scheifly and David L. Case, for the petitioner. Robert G. Martinell, for the respondent. HALL MEMORANDUM FINDINGS OF FACT AND OPINION HALL, Judge: Respondent determined the following deficiencies in the petitioner's Federal income taxes: Year
Deficiency
1966
$ 2,621.17
1967
31,170.12
1968
30,044.75
1969
486.35 The sole issue in this *36 case is whether respondent correctly disallowed the bad debt deduction claimed by petitioner in 1964, and therefore correctly disallowed the capital loss carryovers claimed by petitioner during the years in issue attributable to that bad debt deduction. FINDINGS OF FACT Some of the facts have been stipulated and are found accordingly. Petitioner was a resident of California when she filed her petition. Petitioner's first husband died during the early 1940's, leaving her a substantial estate. In 1944 petitioner married Arthur Lyons, a well-known theatrical agent and a film producer. [1] Arthur Lyons conducted his businesses through his wholly-owned corporation, A. and S. Lyons, Inc. Mr. Lyons had great artistic talent. Prior to petitioner's marriage to Mr. Lyons, Lyons had started producing motion pictures. His first movie was "The Southerner", which was recognized by critics as an artistic success, but was a financial failure. In 1945, Mr. Lyons produced a second film, "The Ruthless." Petitioner (among others) invested money in this film and received stock in the production company. By about 1947 it was clear that this picture *37 also was an artistic success but a financial failure. This was the last film Mr. Lyons produced. From the time petitioner married Mr. Lyons until his death in 1964, Mr. Lyons was frequently without financial resources to pay his bills. He had no money at the time petitioner divorced him in 1953 and no money or other property at the time of his death. During the time petitioner was married to Mr. Lyons, his theatrical agency was declining. He lost artists to other, more competitive agencies, and he spent more of his time attempting to promote film productions and less attending to his agency business. It is not clear when Mr. Lyons ceased functioning as an agent. His corporation apparently had ceased active operations by 1953. However, Mr. Lyons was still unsuccessfully attempting to get financial backing for film productions at the time of his death. Petitioner frequently gave money to Mr. Lyons from the time of their marriage in 1944 until his death in 1964. Petitioner also loaned money to A. and S. Lyons, Inc., from 1944 to 1950. Petitioner's lawyer, Mr. Saxe, was engaged in 1950 to make arrangements with regard to repayment of her loans to A. and S. Lyons, Inc. He and petitioner's *38 accountant worked together to determine the total of the debt. Petitioner's accountant determined that the amount she had previously loaned to the corporation was $282,197.85. On July 12, 1950 a demand note payable to petitioner was prepared by petitioner's attorney and signed by Mr. Lyons as president of A. and S. Lyons, Inc. Petitioner never received any security or collateral from A. and S. Lyons, Inc. or Mr. Lyons. She never received any balance sheets, profit and loss statements or any other financial data from A. and S. Lyons, Inc. or Mr. Lyons. Neither Mr. Lyons nor his corporation ever repaid any of the money petitioner gave or loaned to either of them. Mr. Lyons orally guaranteed the debt in issue and considered the obligation to be both his and that of the corporation. Mr. Lyons annually told petitioner's accountant that he intended to repay the loan. Petitioner always expected Mr. Lyons to repay the loan. She felt that the means by which A. and S. Lyons, Inc., or Mr. Lyons could repay her would be from the proceeds of films which Mr. Lyons hoped to produce and in which he would hold participations. Petitioner claimed a loss on her 1964 return of $282,197.85, arising *39 from the worthlessness of her non-business debt due from A. and S. Lyons, Inc. Based on the claimed loss in 1964, petitioner claimed capital loss carryovers to the years 1966 through 1969. Respondent disallowed these claimed capital loss carryovers. ULTIMATE FINDINGS OF FACT A. and S. Lyons, Inc. owed petitioner $282,197.86, which amount was later evidenced by a note dated July 12, 1950. The loans were worthless prior to 1964. OPINION Respondent contends that petitioner is not entitled to a bad debt deduction in 1964 because she has not shown that she, in fact, made any loans to A. and S. Lyons, Inc.; that if she did transfer money to the corporation, it did not create a bona fide debt; and if there were a debt, it became worthless in some year other than 1964. To be entitled to a bad debt deduction, there must have been a bona fide debt arising from a debtor-creditor relationship based upon a valid and enforceable obligation to pay a fixed or determinable sum of money. Section 1.166-1(c), Income Tax Regs. A taxpayer is entitled to deduct a bad debt in the *40 taxable year within which it becomes worthless. Section 166(a)(1). [2] A non-business bad debt is deductible as a short-term capital loss (section 166 (d)(1)) in the year in which it becomes entirely (as opposed to partially) worthless. Section 1.166-5(a)(2), Income Tax Regs.
Intrafamily transactions are subject to rigid scrutiny. Estate of Carr V. Van Anda,12 T.C. 1158 (1949), affd. 192 F. 2d 391 (2d Cir. 1951). However, loans between wife and husband (or his wholly-owned corporation) can be bona fide debts when the lender has a real expectation of repayment and an intent to enforce collection of the indebtedness. Between 1944 and 1950 petitioner loaned large sums of money to A. and S. Lyons, Inc., her then husband's wholly-owned corporation which was engaged in the theatrical agency business and in the production of films. Petitioner also made gifts to her then husband, Mr. Lyons, and to his corporation during this *41 period, and thereafter to Mr. Lyons until his death in 1964. In 1950 petitioner engaged an attorney, Mr. Saxe, to look after her loans to A. and S. Lyons, Inc. Mr. Saxe, with the help of petitioner's accountant, determined the amount of the loans previously made to A. and S. Lyons, Inc., to be $282,197.85. Mr. Saxe then prepared a demand note in that amount dated July 12, 1950, payable to petitioner, which was signed by Mr. Lyons as president of the corporation. Petitioner always expected that some day Mr. Lyons or his corporation would be able to repay her. Mr. Lyons made it clear he intended to repay the loans, and so stated annually to petitioner's accountant. Petitioner believed Mr. Lyons, who was known for his artistic talents as a theatrical agent and film producer, would be able to make enough money to repay her. Petitioner and Mr. Lyons understood that Mr. Lyons personally guaranteed the loans to A. and S. Lyons, Inc. Mr. Lyons stated numerous times he intended to repay the loans after the corporation apparently ceased active operations around 1953. Therefore petitioner deferred her bad debt deduction until after Mr. Lyons' death. The debt involved was not related to any *42 trade or business of petitioner. Thus, the debt was a non-business bad debt, deductible only when wholly worthless. Section 1.166-5(a), Income Tax Regs. As long as any portion of the debt could reasonably be expected to be recovered, no deduction could be taken. While we do not doubt the sincerity of petitioner's belief that some day Mr. Lyons would make enough money to repay her, we have concluded as a fact that the loans to A. and S. Lyons, Inc., if they ever had any value, had become worthless before 1964. Mr. Lyons' second and last film was produced in 1945. From then until his death in 1964, he was never able to get the financial backing to make another film. Meanwhile he let his theatrical agency go out of business through inattention to the business. A. and S. Lyons, Inc. had ceased all activity by 1953, and thereafter had no way of generating any income. Mr. Lyons was without assets or any means of support at the time petitioner divorced him in 1953, and was still without assets at the time of his death in 1964. A debt becomes worthless when further efforts *43 to collect it would prove fruitless. The deduction of a bad debt cannot be postponed on the bare hope that something might be recovered in the future. While petitioner here appears to have been sincere, a bad debt becomes worthless when it is clear to an informed person that there is no material possibility of collection of any part of it. The test is objective rather than subjective, and a creditor's unwarranted optimism cannot defer the proper year of deduction. Minneapolis St. Paul & Sault Ste. Marie R.R. Co. v. United States,164 Ct. Cl. 226 (1964), 64-1U.S.T.C., par. 9213, 13 A.F.T.R. 2d 472); W. A. Dallmeyer14 T.C. 1282, 1291 (1950). On these facts, only an incorrigible optimist would have expected Mr. Lyons to be able to obtain financing for his films after his two financial failures and 19 years of unsuccessful attempts thereafter to promote a film. The debt was worthless (if it ever had value) prior to 1964. Decision will be entered for respondent.
Footnotes
1. Petitioner divorced Mr. Lyons in 1953.↩
2. All section references are to the Internal Revenue Code of 1954, as in effect during the years in issue.↩